UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JACQUELINE GILDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:05-CV-702 AS |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

On October 25, 2005, Plaintiff Jacqueline Gildon (Gildon) filed her complaint in this Court. On February 28, 2006, Gildon filed an opening brief that seeks this Court to enter judgment in her favor or to remand this matter to the Commissioner. On May 12, 2006, Defendant Social Security Administration filed its response brief. On May 30, 2006, Gildon filed her reply brief. On July 17, 2006, this matter was referred to the undersigned to conduct such proceedings as necessary to enter a report and recommendation. The following Report and Recommendation is based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.    PROCEDURAL BACKGROUND**

On October 5, 2000, Gildon filed her most recent application for disabled widow's benefits under the Social Security Act, 42 U.S.C. § 402(e).[1] (Tr. 25-30). Gildon was married to Ozell Gildon who died on October 16, 1977. (Tr. 26). Ozell was the wage earner. (Tr. 23).

---

[1] Gildon apparently has filed several claims for disabled widows benefits. Over the years, these claims have been heard, remanded, dismissed, and re-filed. (Tr. 15). While the complete history is potentially complicated, the only relevant procedure is the most recent review of Gildon's claim, which contains the facts and record for the current issues before this Court.

Gildon alleged that she was entitled to disabled widows benefits because she had been disabled since her husband's death. (Tr. 15, 16). In order to qualify for continuing disability as a widow, Gildon needed to prove she suffered from a severe continuing disability that began no later than 7 years after the wager earner's death, which was October of 1984. (Tr. 16).

On October 21, 2003, the Administrative Law Judge (ALJ) held a hearing. (Tr. 98-112). Gildon produced several medical records from before 1984, which she claimed supported the fact that she had been disabled since her husband's death. (Tr. 17). On March 8, 2004, the ALJ issued a decision denying Gildon's application. (Tr. 12). The ALJ found that there was a total lack of medical evidence between 1978 and 1984 and not enough evidence prior to 1978 to support a finding that Gildon had impairments that were severe and ongoing. (Tr. 21). The ALJ found that Gildon only suffered from scoliosis of the dorsal spine, anxiety neurosis, and a former drug addiction. (Tr. 20, 61-64). However, these problems caused only minimal functional limitations from 1977 to 1984. (Tr. 21-22). As a result, the ALJ found that Gildon had not met her burden of proving that her impairments were severe so as to limit her ability to perform basic work activities.[2] (Id.)

---

[2] The complete findings of the ALJ were:

1. The claimant meets all of the nondisability requirements for Disabled Widow's Insurance Benefits set forth in Section 202(e) of the Social Security Act (with the exceptions noted in 20 CFR § 404.335(e)). The claimant's prescribed period begins October 1, 1977 [sic] and ends October 1, 1984.
2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
3. The claimant has the following medically determinable impairment(s): scoliosis of t the dorsal spine.
4. The claimant did not have any impairment or impairments that significantly limited her ability to perform basic work-related activities; therefore, the claimant did not have a "severe" impairment that began on or before October 1, 1984, the end of the specified period (20 CFR [sic] § 404.1520(c)).
5. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the end of the specified period for Widow's Disability

Gildon appealed the ALJ's decision to the Appeals Council but it denied Gildon's request for review. (Tr. 4). The Appeals Council did not provide its reasoning for denying Gildon's request for review. (Tr. 4-6). Consequently, on October 25, 2005, Gildon filed a complaint in this Court seeking a review of the ALJ's decision. This Court may enter a report and recommendation in this matter based on its referral order, 28 U.S.C. § 636(b)(1)(B), and 42 U.S.C. § 405(g).

## II.    ANALYSIS

### A.    Facts

During the hearing before the ALJ, Gildon submitted a variety of medical forms. First, Gildon submitted a form used by the Indiana State Welfare Department to determine whether a person is disabled and eligible for medical assistance. (Tr. 18, 55-58). It includes records of a physical examination by G.B. Mitchell, M.D., (Dr. Mitchell) that took place on June 9, 1975. This document is mostly illegible, but it does have a box checked that indicates Gildon had a physical or mental impairment that appeared reasonably certain to continue throughout her lifetime without significant improvement and would substantially impair her ability to engage in work. (Tr. 19, 58). Furthermore, the document is titled "Determination of Permanent and Total Disability." (Tr. 55). However, there is no legible evaluation or explanation of her disability. (Tr. 55-58).

Second, Gildon submitted another form that indicates Gildon was eligible for medical assistance from the Indiana Department of Public Welfare because she was permanently and totally disabled. (Tr. 19, 59). The document is dated July 16, 1975, and is signed by W.C.

---

Benefits (20 CFR [sic] § 404.152(c)).
(Tr. 22).

3

Stafford, M.D.  (Id.)  It contains no information pertaining to disability, but it does have a box checked that indicates Gildon met the eligibility requirements for permanent and total disability. (Id.). Again, the document is titled "Determination of Permanent and Total Disability Decision of Medical Review Team."  (Id.).

Third, Gildon submitted a brief letter from Benjamin F. Grant, M.D., (Dr. Grant) to an Indiana Department of Public Welfare caseworker.  (Tr. 60).  The only thing this document indicates is that Gildon continued to be disabled as of September 23, 1976.  (Tr. 20, 60). However, the document contains no explanations, descriptions, or any other information other than this statement.  (Tr. 60).

Fourth, Gildon submitted another form used by the Indiana State Welfare Department to determine whether a person is disabled and eligible for medical assistance.  (Tr. 20, 61).  This form is dated November 3, 1977, and was completed by Dr. Grant, and again, it is mostly illegible.  (Tr. 20, 64).  However, it does indicate Gildon suffered from scoliosis of the dorsal spine, anxiety neurosis, and a former drug addiction.  (Tr. 20, 61-64).  This document is also titled "Determination of Permanent and Total Disability." (Tr. 61).

Finally, Gildon submitted another form used by the Indiana State Welfare Department signed on August 24, 1978, by George Scott, M.D. (Tr. 20, 65).  The form indicates nothing except that Gildon was eligible for medical assistance and that no re-examination or progress report was required.  (Tr. 65).  This document is titled similar to the others, "Determination of Permanent and Total Disability Decision of Medical Review Team."  (Id.).

Gildon also stated at the hearing that she currently has arthritis, and that she was receiving pain pills prior to 1984.  (Tr. 105).  Gildon also represented that two of the doctors

4

from the documents she submitted, Dr. Grant and Dr. Mitchell, were her regular physicians.  (Tr. 107).

      B.      Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error.  See 42 U.S.C § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003).  Substantial evidence is more than a scintilla and means such relevant evidence as a reasonable mind might accept to support such a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1972).  A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion.  Haynes, 416 F.3d at 626.  An ALJ decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues.  Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).  However, an ALJ's legal conclusions are reviewed *de novo*.  Haynes, 416 F.3d at 626.

      C.      Gildon's Motion for Summary Judgment or Remand

Gildon asserts two arguments.  First, she contends that she was denied her procedural due process based on the response from the Appeals Council.  Second, she contends that she submitted sufficient evidence at the hearing to establish that she had a severe impairment that began prior to October of 1984.

      1.      Gildon's Procedural Due Process Claim

First, Gildon claims she was denied procedural due process, which is a question of law this Court reviews *de novo*.  To determine if there is a deprivation of procedural due process, a

5

court must inquire into 1) the private interest that will be affected by the action, 2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards, and 3) the interest of the government including the function involved and the administrative burdens additional procedures would cause.  See Mathews v. Eldridge, 424 U.S. 319, 335 (1976); Conn. v. Dohr, 501 U.S. 1, 11 (1991) (citations omitted).  Gildon contends that she was denied her constitutional due process rights because the Appeals Council simply upheld the ALJ decision without a detailed explanation.

An individual has some property interest in statutorily created benefits.  Mathews, 424 U.S. at 332.  Even though Gildon has some property rights in her disabled widow's benefits, this Court does not agree that Gildon was denied her procedural due process.  It is fundamental that the affected party must be granted the right to notice and an opportunity to be heard at a meaningful time and in a meaningful manner.  Fuentes v. Shevin, 407 U.S. 67, 80 (1983); U.S. v. James Daniel Good Real Property, 510 U.S. 43, 55 (1993).  Some form of hearing is generally required before an individual is deprived of a property interest.  Mathews, 424 U.S. at 333.  In the present case, Gildon participated in a hearing before an ALJ, she presented evidence, and she presented her arguments prior to the deprivation of her disabled widow's benefits.  Further, the fact that Gildon participated in the hearing necessarily implies that she received adequate notice. Gildon's property interest in her disabled widow's benefits require no more process than this. See Mathews, 424 U.S. at 349.

Even though Gildon claims she was denied her due process, Gildon actually appears to argue that the Appeals Council made a mistake in law rather than a due process violation. Gildon appears to argue that the regulations require the Appeals Council to articulate its

6

reasoning when it declines to review a claim. But, this claim is also incorrect. The Appeals Council's decision to review a case is discretionary. Eads v. Sec. of Dept. of Health and Human Servs., 983 F.2d 815, 816 (7th Cir. 1993). When the Appeals Council receives a request for review, it may deny, dismiss, or grant the request. 20 C.F.R. § 416.1467. An Appeals Council does not need to articulate its reasoning if it denies a request because the denial is not subject to judicial review. Damato v. Sullivan, 945 F.2d 982, 988 (7th Cir. 1991). If the Appeals Council denies a request for review, the ALJ decision becomes the final decision. Id. The Appeals Council may utilize its discretion in this way if it desires, which it did in the present case. Therefore, the Appeals Council did not make a mistake of law when it did not articulate its reasoning for denying Gildon's review.

Consequently, because there has not been a denial of due process and because the Appeals Council did not make a mistake in law, Gildon's only argument remaining is that the ALJ's decision was not supported by substantial evidence.

        2.      Gildon's Denial of Benefits Claim

To be entitled to disabled widow's benefits, Gildon must establish that she meets the requirements of 20 C.F.R. § 404.335. The only requirement at issue in this case is whether Gildon was severely disabled within seven years after the death of her husband. 20 C.F.R. § 404.335(c). The Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: 1) the claimant

7

is presently employed; 2) the claimant has a severe impairment or combination of impairments, 3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity, 4) the claimant's residual functional capacity leaves him unable to perform his past relevant work, and 5) the claimant is unable to perform any other work existing in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; Briscoe, 425 F.3d at 352.  If the ALJ finds that the claimant is not disabled at any step, he may make his determination without evaluating the remaining steps.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five.  Briscoe, 425 F.3d at 352.

      A physical or mental impairment must be established by medical evidence through signs, symptoms, and laboratory findings.  20 C.F.R. § 404.1508.  The statements of the claimant alone are insufficient.  Id.  A severe impairment is one which significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1521; Taylor v. Schweiker, 739 F.2d 1240, 1242 (7th Cir. 1984).  Basic work activities are the abilities needed to do most jobs such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, seeing, hearing, speaking, understanding, remembering simple instructions, use of judgment, responding appropriately to supervision and co-workers, and dealing with changes in a routine work setting.  See 20 C.F.R § 404.1521(b); Bunch v. Heckler, 778 F.2d 396, 401 (7th Cir. 1985); Taylor, 739 F.2d at 1243.

      The ALJ considered all of the medical documents Gildon submitted.  The ALJ found that Gildon did not have a severe impairment under step two within the seven year period from her

husband's death, 1977 to 1984. (Tr. 21-22).  The only thing that the ALJ ascertained from the medical records is that Gildon suffered from scoliosis of the dorsal spine, anxiety neurosis, and a former drug addiction.  Because most of the documents were not legible, the ALJ found no evidence that Gildon was significantly limited to perform any basic work activities so as to conclude that Gildon suffered from severe disabilities.  The ALJ found the general conclusion that Gildon was permanently disabled to be insufficient to make the determination that Gildon's disabilities were severe.

This Court finds the ALJ's conclusions were supported by substantial evidence.  Even though the documents themselves are medical documents signed by Gildon's regular doctors and indicate that Gildon was generally disabled, most of the documents are illegible.  There is no way to discern if Gildon was significantly limited in her ability to perform basic work activities. It is impossible to determine what, if any, signs, symptoms, or laboratory findings were done or found to establish Gildon's limitations, and as a result, it is impossible to determine the severity of Gildon's impairment.  Gildon submitted no additional evidence to establish this fact.  Based on the lack of evidence and the substance of the evidence, the ALJ reasonably found that there was not enough evidence to conclude that Gildon suffered from a severe impairment.

Gildon contends that because most of documents are titled "Determination of Permanent and Total Disability," because they were state documents, and because some bear her physicians' signatures, the clear and logical conclusion is she suffered from a severe disability. While these things may arguably suggest that Gildon suffered from a severe disability, it is equally reasonable that the lack of evidence within the documents conversely suggests that she did not have a severe disability.  This Court is not to re-weigh the evidence.  Haynes, 416 F.3d at

626. However, Gildon asks this Court to do precisely that by giving more weight to the titles, origins, and signatures of the documents than the lack of substance of the documents. The ALJ is only required to reach a decision that a reasonable mind would reach, and to create a logical bridge from the evidence to his conclusion. The ALJ found the titles, origins, and signatures of the documents were merely conclusory. The ALJ indicated that there were no laboratory tests, clinical findings, or function by function assessments that lead to a analytically conclude Gildon's disability was severe. The ALJ's analysis was logical and reasonable, which means it was supported by substantial evidence.

  Gildon also contends that the ALJ erred because he specifically looked for signs, symptoms, and laboratory findings as proof that Gildon's disability was severe. Gildon contends the ALJ's review was too stringent because Social Security Ruling 85-28 suggests an ALJ should utilize a cautious review of the severity of a claimant's disability. <u>Titles II and XVI: Medical Impairments that are not Severe</u>: SSR 85-28, at 4 (Social Security Administration 1985). However, even though Social Security Ruling 85-28 demands a cautious review, it still indicates that the severity requirement cannot be satisfied if the claimant can perform the basic work activities of walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, using judgement, responding appropriately to supervision and coworkers, and dealing with changes in a routine work setting. <u>Id</u>. Gildon has failed to present any evidence that suggests she could not perform basic work activities from 1977 to 1984. The medical documents also provide no information on this point. The ALJ appears to have stated that no signs, symptoms, and laboratory findings existed as an explanation exemplification of the fact

that nothing existed to indicate the severity of Gildon's disability.  Consequently, despite the warning of Social Security Ruling 85-28, the ALJ's decision was reasonable because there was no evidence to create a dispute as to whether Gildon was severely disabled.

In short, the ALJ reasonably concluded that Gildon's disability was not severe because there is no evidence to suggest Gildon could not perform basic work activities.  This Court will not re-weigh the evidence to reach a different conclusion.  Judgment should be entered in favor the Social Security Administration.

### III. CONCLUSION

Gildon was not denied her procedural due process when the Appeals Council adopted the decision of the ALJ without explanation.  Further, the ALJ's decision was supported by substantial evidence.  Consequently, this Court **REPORTS AND RECOMMENDS** that judgment should be entered in favor of the Social Security Administration affirming the Commissioner's decision pursuant to sentence four (4) of 42 U.S.C. § 405(g).  The Clerk should be instructed to terminate this case.

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER**

**SO ORDERED.**

Dated this 1st Day of December, 2006.

              S/Christopher A. Nuechterlein
              Christopher A. Nuechterlein
              United States Magistrate Judge